UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
─────────────────────────────────────────

HADASSAH, THE WOMEN'S ZIONIST
ORGANIZATION OF AMERICA, INC.,

                               Plaintiff,

                  -v-

HADASSAH ACADEMIC COLLEGE,

                               Defendant.

19-CV-8953 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

      Plaintiff Hadassah, the Women's Zionist Organization of America, Inc. ("Hadassah"), filed this action against the Hadassah Academic College for trademark infringement, unfair competition, breach of contract, unjust enrichment, and other declaratory relief. Defendant answered, raising an affirmative defense that Plaintiff had breached a covenant of good faith and fair dealing. After reviewing additional documents produced in discovery, Defendant moves to amend the answer to add a counterclaim that Plaintiff breached a covenant of good faith and fair dealing. Plaintiff opposes. For the reasons that follow, Defendant's motion to amend is granted.

**I.    Background**

      Hadassah, the Women's Zionist Organization of America, Inc., is a not-for-profit organization "dedicated to enhancing the health and lives of people in Israel, the United States and worldwide." (Dkt. No. 1 ¶ 2.) To that end, Plaintiff "raises money in the United States from its well established donor base and supports a number of charitable organizations in Israel, including giving millions of dollars over the years to" the Hadassah Academic College, which is "a not-for-profit college located and operating in Jerusalem, Israel." (Dkt. No. 1 ¶ 3.)

1

In June 2016, Hadassah and the Hadassah Academic College entered into an agreement to formalize their charitable dealings. (Dkt. No. 1 ¶ 29.) As relevant here, the agreement provided that, upon request, Hadassah "may, at its sole discretion, notify [Hadassah Academic College] of any amounts available to be considered for a Grant." (Dkt. No. 1-2 at 1.) Hadassah further "reserve[d] the right, at any time, in its sole and absolute discretion, to withhold, terminate or demand repayment of Grant payments . . . if in its opinion [the] funds are not being used pursuant to the approved purposes of the Grant or there is any other failure of [the] Grantee to comply with the terms" of the agreement. (Dkt. No. 1-2 at 5.)

The agreement imposed obligations on Hadassah Academic College. As alleged, it restricted how Hadassah Academic College could communicate with Hadassah's donors. (Dkt. No. 1 ¶ 29.) It directed Hadassah Academic College not to "directly or indirectly disparage [Hadassah] or its reputation especially with respect to the receipt by [Hadassah] of Grants." (Dkt. No. 1 ¶ 29.) And it provided that Hadassah Academic College could not use Hadassah's name or logo "without the prior written permission" of Hadassah. (Dkt. No. 1 ¶ 29.)

The complaint alleges that Hadassah Academic College has "contacted a number of Hadassah donors without Hadassah's permission, and without providing copies of those communications to Hadassah as required under the [a]greement." (Dkt. No. 1 ¶ 35.) The complaint also alleges that Hadassah Academic College has "solicit[ed] donations from such donors" (Dkt. No. 1 ¶ 36) and raised funds "under the name HADASSAH ACADEMIC COLLEGE or FRIENDS OF HADASSAH ACADEMIC COLLEGE" even though it lacks permission to use the name "HADASSAH." (Dkt. No. 1 ¶ 39.) The complaint notes that Hadassah owns federal trademark registrations for the mark HADASSAH. (Dkt. No. 1 ¶ 24.)

Plaintiff brought claims for breach of contract (Dkt. No. 1 ¶¶ 49-53), federal trademark infringement (Dkt. No. 1 ¶¶ 54-59), federal unfair competition (Dkt. No. 1 ¶¶ 60-65), unjust enrichment (Dkt. No. 1 ¶¶ 66-68), and declaratory judgment (Dkt. No. 1 ¶¶ 69-74).

Hadassah Academic College answered in a timely manner.  (*See* Dkt. No. 39.)  Among other affirmative defenses, Hadassah Academic College asserted that Plaintiff's claims failed because Plaintiff had "breached its duty of good faith and fair dealing."  (Dkt. No. 39 ¶ 92.)  The answer alleged that the agreement "restrict[ed] aspects of [Hadassah Academic College]'s independent fundraising efforts on the understanding that [Hadassah] would forward to [Hadassah Academic College] all donations earmarked for [Hadassah Academic College,]" but Hadassah "failed, and continues to fail, to forward such funds."  (Dkt. No. 39 ¶ 93.)  In support, the answer alleged that Hadassah had "refused to transfer funds to [Hadassah Academic College] or provide any information on available funds to which [Hadassah Academic College] was the clear intended beneficiary"; "withheld endowment interests held by [Hadassah] at the bequest of individuals who left money in their wills to 'Hadassah College Jerusalem'"; and "reclassif[ied] funds on its internal financial statements from funds allocated to 'Hadassah College of Technology' to a more general classification for 'Education' in Jerusalem."  (Dkt. No. 39 at 4.)

Hadassah Academic College now moves to amend its answer to add a counterclaim.  (*See* Dtk. No. 58.)  The proposed counterclaim asserts that Hadassah "breach[ed] . . . the covenant of good faith and fair dealing arising from" the agreement.  (Dkt. No. 60-1 ¶ 109.)  The proposed amended answer alleges that the premise of the agreement between the parties was "that there are funds made 'available' by [Hadassah] for [Hadassah Academic College] where donors intended their donations to be provided to [Hadassah Academic College]."  (Dkt. No. 60-1 ¶ 114.)  It alleges that Hadassah "carried out a plan to deprive [Hadassah Academic

College] of donors' funds which should rightfully have been forwarded to [Hadassah Academic College], and instead to allocate those funds for [Hadassah]'s own uses." (Dkt. No. 60-1 ¶ 111.)

The amended answer explains that Hadassah "took the position that any endowment where the donor did not specifically name [Hadassah Academic College] . . . did not need to be forwarded." (Dkt. No. 60-1 ¶ 116.) It also explains that Hadassah "took the position that any donation that had a 'discretion' clause — even where donations were earmarked for [Hadassah Academic College] or intended to be provided to [Hadassah Academic College] — did not need to be forwarded to [Hadassah Academic College]." (Dkt. No. 60-1 ¶ 116.) As a consequence, Defendant alleges, Hadassah withheld "the annual funding provided by at least 36 endowments earmarked by donors for [Hadassah Academic College]." (Dkt. No. 60-1 ¶ 120.) Hadassah also withheld "the entire annual income from the Francis Morris Trust." (Dkt. No. 60-1 ¶ 121.)

Further, the proposed amended answer alleges that Hadassah's plan was "a clandestine, premeditated effort." (Dkt. No. 60-1 ¶ 117.) The proposed answer alleges that Hadassah "undertook a project to review all outstanding donations (including endowments, trusts and bequests under wills) to figure out how they could divert the funds away from [Hadassah Academic College]." (Dkt. No. 60-1 ¶ 118.) It identifies an internal memorandum reflecting that project. (Dkt. No. 60-1 ¶ 119.) It also identifies other internal emails between Hadassah and donors indicating attempts to convince donors to reassign funds. (Dkt. No. 60-1 ¶¶ 127-28, 134.) Accordingly, the proposed amended answer seeks damages proximately caused by the breach; an injunction directing Plaintiff to send donations earmarked for the Hadassah Academic College; prejudgment interest; costs; and attorneys' fees. (Dkt. No. 60-1 at 55-56.)

Plaintiff opposes leave to amend on the ground that Hadassah Academic College has failed to satisfy Federal Rule of Civil Procedure 16(b). In the alternative, Plaintiff contends that

4

the motion to amend should be denied under Federal Rule of Civil Procedure 15 because the proposed amended answer is unduly delayed, futile, and unduly prejudicial.

**II.     Discussion**

Under the Court's scheduling order, the pleadings closed on September 15, 2020.  (*See* Dkt. No. 44 ¶ 4.)  Defendant filed its motion to amend on February 26, 2021.  (*See* Dkt. No. 58.)  Where a scheduling order governs amendments to the complaint, and a party wishes to amend after the scheduling deadline has passed, the party "must satisfy both Federal Rules of Civil Procedure 15 and 16 to be permitted to amend."  *Pasternack v. Shrader*, 863 F.3d 162, 174 n.10 (2d Cir. 2017) (cleaned up).  Defendant has satisfied Rule 16 because it has shown good cause to amend.  Defendant has satisfied Rule 15 because the proposed counterclaim is not unduly delayed, unduly prejudicial, or futile.

**A.     Rule 16**

Rule 16 of the Federal Rules of Civil Procedure provides that "[a] schedule may be modified only for good cause and with the judge's consent."  Fed. R. Civ. P. 16(b)(4).  The "primary consideration" in determining whether good cause exists "is whether the moving party can demonstrate diligence."  *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 244 (2d Cir. 2007).  "The 'good cause' standard is met where the proposed amendment rests on information that the party did not know (or there is no reason to believe the party should have known) before the deadline."  *Perez v. 117 Ave. of the Ams. Food Corp.*, No. 15 Civ. 8151, 2016 WL 5415090, at *2 (S.D.N.Y. Sept. 27, 2016).  The standard is typically not met "when the proposed amendment rests on information that the party knew, or should have known, in advance of the deadline."  *Goldman v. Reddington*, No. 18 Civ. 3662, 2021 WL 4099462, at *2 (E.D.N.Y. Sept. 9, 2021).

Defendant's proposed counterclaim rests primarily on information obtained during discovery conducted after the pleading deadline had elapsed. Defendant asserts that Hadassah breached a covenant of good faith and fair dealing principally because Hadassah withheld the annual funding for 36 endowments earmarked by donors for Hadassah Academic College as well as the entire annual income from the Francis Morris Trust. (Dkt. No. 60-1 ¶¶ 120-21.) Defendant further alleges that those withholdings reflected "a clandestine, premeditated effort" to "review all outstanding donations . . . to figure out how . . . [to] divert the funds away from [Hadassah Academic College]." (Dkt. No. 60-1 ¶¶ 117-18.) Defendant represents that it received many of the relevant documents disclosing such efforts after the pleadings closed (*see* Dkt. No. 71 at 5-6), only weeks before filing its motion to amend (*see* Dkt. No. 59 at 3-4). It does appear that Hadassah produced most of its relevant documents after January 25, 2021, just weeks before Hadassah Academic College filed its proposed motion to file a counterclaim. (*See* Dkt. No. 60 ¶ 4; Dkt. No. 72 ¶ 28.) Accordingly, Defendant has shown diligence.

Plaintiff protests that Defendant knew enough before the deadline to raise the purported breach of the covenant of good faith and fair dealing as an affirmative defense, so Defendant could have raised the breach as a counterclaim at that time. But the facts that Defendant "learned during discovery are both more varied and more detailed than those included" in the initial pleading, and the "additional facts" may have been "necessary" to Defendant's counterclaim, *Soroof Trading Dev. Co. v. GE Microgen, Inc.*, 283 F.R.D. 142, 149 (S.D.N.Y. 2012), so a belated amendment is permissible. True, Defendant knew that Hadassah "was withholding contributions" (Dkt. No. 71 at 7), so it could have attempted a counterclaim on that basis. But Defendant learned "the precise amounts of donor funds earmarked for [Hadassah Academic College] and withheld by [Hadassah]" only through discovery (Dkt. No. 71 at 7), so the viability

of a damages counterclaim was made clear only after the deadline.  Further, Defendant obtained documents evidencing intentionality only after the deadline (Dkt. No. 71 at 7), which unquestionably "strengthen[ed] the counterclaim's ability to withstand a motion to dismiss." *Hybrid Athletics, LLC v. Hylete, LLC*, No. 17 Civ. 1767, 2019 WL 4143035, at *12 (D. Conn. Aug. 30, 2019).  Accordingly, it was reasonable for Defendant to assert a belated counterclaim.

In any event, permitting the proposed amendment would not be prejudicial.  In assessing whether to permit a belated amendment, diligence is not "the only consideration." *Kassner*, 496 F.3d at 244.  A district court "also may consider other relevant factors including, in particular, whether allowing the amendment of the pleadings at this stage of the litigation will prejudice" the nonmoving party. *Id.*  Indeed, where the amendment is not prejudicial, "district courts in this Circuit have held they have 'discretion to grant a motion to amend even where the moving party has not shown diligence in complying with a deadline for amendments.'" *Suarez v. Cal. Nat. Living, Inc.*, No. 17 Civ. 9847, 2019 WL 5188952, at *2 (S.D.N.Y. Oct. 15, 2019) (quoting *Olaf Sööt Design, LLC v. Daktronics, Inc.*, 299 F. Supp. 3d 395, 397 (S.D.N.Y. 2017)).

Allowing Defendant to amend the answer to add the proposed counterclaim would not prejudice Plaintiff.  "A proposed amendment may be prejudicial if new claims would '(i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction.'" *Jipeng Du v. Wan Sang Chow*, 2019 WL 3767536, at *4 (E.D.N.Y. Aug. 9, 2019) (quoting *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993)).  Defendant's proposed amendment does not have such consequences. Allowing Defendant's proposed counterclaim would not require significant additional resources, because the parties already contemplated discovery over Defendant's affirmative defense

regarding a breach of the covenant of good faith and fair dealing. Adding Defendant's proposed counterclaim therefore would not alter "the focus of the entire case." *Presbyterian Church of Sudan v. Talisman Energy, Inc.*, 582 F.3d 244, 267 (2d Cir. 2009). Although Plaintiff represents that it would retain a damages expert, that expenditure is insignificant in the context of the case. *See Purdue Pharma L.P. v. Ranbaxy Inc.*, No. 10 Civ. 3734, 2012 WL 3854640, at *6 (S.D.N.Y. Sept. 5, 2012).

Allowing the amendment also would not cause a significant delay. "[T]he case is relatively early in the discovery process," and ample time remains before trial. *Fresh Del Monte Produce, Inc. v. Del Monte Foods, Inc.*, 304 F.R.D. 170, 176 (S.D.N.Y. 2014). The parties have exchanged some documents, but they "have neither taken nor scheduled any depositions, they have not identified experts or exchanged expert reports, they have not made motions for summary judgment, and there is no trial date set." *Id.* at 177. Indeed, the parties agreed to extend discovery to accommodate a possible amendment to Defendant's answer. (*See* Dkt. No. 56.) Lastly, allowing the proposed amendment would not implicate any other litigation. Because Defendant's proposed amendment would not be prejudicial, it satisfies Rule 16.

**B.     Rule 15**

Rule 15 of the Federal Rules of Civil Procedure provides that a party may generally "amend its pleading only with the opposing party's written consent or the court's leave," but the "court should freely give leave when justice so requires." Fed. R. Civ. P. 16(a)(2). Amendment is typically permissible "absent evidence of undue delay, bad faith or dilatory motive on the part of the movant, undue prejudice to the opposing party, or futility." *Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275, 283 (2d Cir. 2000). Plaintiff first argues that leave to amend should be denied because the record reflects undue delay as well as undue prejudice. (*See* Dkt. No. 66 at 15-16, 24-25.) Those arguments are rejected for reasons already explained; Defendant was

8

reasonably diligent in raising the proposed amendment, and Plaintiff has not identified any significant prejudice.

Plaintiff also argues that the proposed counterclaim in the amended answer is futile. "A proposed amendment to a [pleading] is futile when it could not withstand a motion to dismiss." *F5 Capital v. Pappas*, 856 F.3d 61, 89 (2d Cir. 2017). Federal Rule of Civil Procedure 12(b) "applies equally to claims and counterclaims; therefore, a motion to dismiss a counterclaim is evaluated under the same standard as a motion to dismiss a complaint." *Xerox Corp. v. Lantronix, Inc.*, 342 F. Supp. 3d 362, 367 (W.D.N.Y. 2018). To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible when it "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This means, for example, that a claim is properly dismissed where, as a matter of law, the allegations, "however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558. A claim is also properly dismissed "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679.

Plaintiff argues that Defendant's proposed counterclaim cannot state a claim for breach of the covenant of good faith and fair dealing because the parties' agreement allegedly granted Hadassah the discretion to withhold grants, and "the obligation of good faith and fair dealing does not negate an expressly bargained-for clause that allows a party to exercise its discretion." (Dkt. No. 66 at 17 (quoting *Paxi, LLC v. Shisheido Ams. Corp.*, 636 F. Supp. 2d 275, 286 (S.D.N.Y. 2009)). "Under New York law," however, "a covenant of good faith and fair dealing is implied in all contracts." *State St. Bank & Tr. Co. v. Inversiones Errazuriz Limitada*, 374 F.3d

158, 170 (2d Cir. 2004) (quoting *1-10 Indus. Assocs., LLC v. Trim Corp. of Am.*, 747 N.Y.S.2d 29, 31 (2d Dep't 2002)). And "[h]istorically, New York courts have held that the covenant of good faith and fair dealing applies to cases where a contract contemplates the use of discretion." *S. Telecom Inc. v. ThreeSixty Brands Grp., LLC*, 520 F. Supp. 3d 497, 2021 WL 621235, at *5 (S.D.N.Y. 2021) (collecting cases). Specifically, "courts will not hesitate to infer an obligation to act in good faith" where "it is necessary to read an obligation of good faith in order to avoid rendering a contract promise illusory." *Id.* at *7. In such circumstances, "[e]ven where a contract permits discretion to a contracting party, that party may not exercise that discretion arbitrarily or irrationally." *Id.* at *6.

Defendant's counterclaim states a claim under these principles. The amended answer raises an inference that the parties' agreement would be illusory absent an obligation of good faith. The only benefit from the agreement to Defendant alleged at this stage of the litigation is the receipt of funds from Plaintiff. (*See* Dkt. No. 60-1 ¶¶ 113-115.) Absent an obligation to identify and forward those funds in good faith, it is plausible that Plaintiff's consideration under the agreement would be "so insubstantial as to impose no obligation." *Lend Lease (US) Constr. LMB Inc. v. Zurich Am. Ins. Co.*, 28 N.Y.3d 675, 684 (2017).

Further, the amended answer raises an inference that Plaintiff exercised its discretion arbitrarily, irrationally, and in bad faith. Taking the allegations in the proposed amended answer as true, the Court must accept that Hadassah "undertook a project to review all outstanding donations . . . to figure out how they could divert the funds [earmarked for Hadassah Academic College] away from [Hadassah Academic College]." (Dkt. No. 60-1 ¶ 118.) And Hadassah in fact withheld "the annual funding provided by at least 36 endowments earmarked by donors for [Hadassah Academic College]" as well as "the entire annual income" from another trust. (Dkt.

No. 60-1 ¶¶ 120-121.). Such allegations raise an inference that Plaintiff took actions in bad faith with "the effect of destroying or injuring the right of [Defendant] to receive the fruits of the contract." *ABN AMRO Bank, N.V. v. MBIA Inc.*, 17 N.Y.3d 208, 228 (2011). Although Plaintiff argues that its documents show that the withholdings reflected "considered decision[s] made in order to further the charitable goal of the organization" (Dkt. No. 66 at 20), disputes over what inferences to draw from such documents are more appropriately resolved at summary judgment.

Finally, Plaintiff cannot rely on collateral estoppel to bar Defendant's counterclaim. Plaintiff argues that Defendant cannot relitigate its claim "that Hadassah purportedly withheld funds donated to Hadassah to which [Hadassah Academic College] believed it was entitled" because that issue was resolved in *Hadassah Academic College v. Hadassah Women's Zionist Organization of America, Inc.*, No. 18 Civ. 2446, 2018 WL 8139301 (S.D.N.Y. Nov. 1, 2018), *Hadassah Academic College v. Hadassah, The Women's Zionist Organization of America, Inc.*, 795 F. App'x 1 (2d Cir. 2019) (summary order), and *Hadassah Academic College v. Hadassah Women's Zionist Organization of America, Inc.*, No. 18 Civ. 2446, 2019 WL 1897668 (S.D.N.Y. Apr. 29, 2019). That litigation, however, was "ultimately about standing" (Dkt. No. 51 at 24:2-13), and it resolved only whether Hadassah Academic College was "entitled to a preference in the distribution of such funds" over other possible beneficiaries, *Hadassah Acad. Coll.*, 795 F. App'x at 2. It did not decide whether Hadassah distributed or withheld funds from Hadassah Academic College in good faith.

### III. Conclusion

For the foregoing reasons, Defendant's motion to amend the answer is GRANTED. Defendant shall file its amended answer and counterclaim in a separate docket entry designated "AMENDED ANSWER." Plaintiff's letter motion to seal at Docket Number 65 and Defendant's letter motion to seal at Docket Number 73 are also GRANTED.

The Clerk of Court is directed to close the motions at Docket Numbers 58, 65, and 73.

SO ORDERED.

Dated: September 29, 2021
       New York, New York

                                                  _____
                                                       J. PAUL OETKEN
                                                   United States District Judge